STATE of Missouri, Respondent,

v.

Dexter DAVIS, Appellant.

No. 36588.

Missouri Court of Appeals, St. Louis District, Division Four.

Sept. 16, 1975.

James C. Jones, Asst. Public Defender, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Timothy J. Verhagen, Asst. Atty. Gen., Jefferson City, for respondent.

ALDEN A. STOCKARD, Special Judge.

Dexter Davis, charged by Information pursuant to the Second Offender Act, § 556.280 RSMo 1969, with carrying a concealed weapon in violation of § 564.610 RSMo 1969, was found guilty by a jury, and was sentenced by the court to the custody of the Department of Corrections for a period of five years. This is a companion case to *State v. Jones,* 523 S.W.2d 152 (Mo. App.1975).

■ Appellant first contends that the trial court erred in overruling his motion for a judgment of acquittal because "there was no evidence to support a finding that [he] intentionally carried a concealed weapon on his person" within the meaning of § 564.610 RSMo 1969. This necessitates a detailed statement of the evidence offered by the State; the appellant having offered no evidence.

Police Officers Robert Letterman and Joseph Mokwa were in an unmarked automobile while maintaining a surveillance of a house in the 1400 block of East Prairie Street. The reason for the surveillance is not disclosed. About noon the officers observed appellant and three other persons walking toward a Pontiac automobile parked in front of the house, and they drove their automobile behind the Pontiac and stopped about twenty feet from it. Neither officer saw a bulge in appellant's clothing as he approached and prepared to enter the Pontiac, but after his companions entered the automobile and appellant was preparing to enter, the officers each saw appellant hand a pistol to one of the occupants. Officer Letterman testified that "when we were approximately twenty to twenty-five feet from them, [appellant] pulled what appeared to be a pistol from his right trouser pocket" and handed it to one of the occupants of the automobile. Officer Mokwa testified that appellant "glanced toward the police vehicle" and then "hurriedly reached inside his pocket and pointed the gun into the car handing it in to the occupant of the automobile." Appellant then entered the Pontiac and it sped away with the police officers in pursuit. During the pursuit appellant threw a paper bag from the automobile, which when retrieved by the police was found to contain a pistol.

Appellant admits, as stated in *State v. Hall,* 508 S.W.2d 200, 206 (Mo.App.1974), that the elements necessary to establish a violation of § 564.610 are: "1. Intention to carry a weapon concealed; 2. Concealment on the person or in such close proximity to the accused so as to be under his easy and convenient control." See also, *State v. Tate,* 416 S.W.2d 103 (Mo.1967). He argues, however, that as to proof of intent, the State rests its case wholly upon circumstantial evidence, and, citing *State v. Casey,* 247

S.W. 114 (Mo.1922), he argues that the circumstances proved must be consistent with each other, consistent with the hypothesis of guilt, and inconsistent with the hypothesis of innocence. Appellant places considerable emphasis on the fact that neither officer saw a bulge in his clothing as he approached and stood outside the Pontiac. We consider this argument to be totally without merit.

■ The offense here charged may, as any other charge, be proved in part by circumstantial evidence, and this is particularly true of the element of intent which is seldom subject to proof by direct evidence. *State v. Chevlin,* 284 S.W.2d 563 (Mo.1955). In *State v. Carter,* 259 Mo. 349, 168 S.W. 679 (1914), it was stated that "Where the state's evidence shows that the weapon is concealed, it would, no doubt, be a sufficient prima facie showing that he intended to conceal the same because from such proof it might well be inferred or presumed that the person *intended* to do that which, in fact, he did do, * * *." See also *State v. Rice,* 490 S.W.2d 27 (Mo.1973); *State v. Holbert,* 416 S.W.2d 129 (Mo.1967); *State v. Crone,* 399 S.W.2d 19 (Mo.1966).

As far back as 1889 in considering a factual situation remarkably similar to that in this case, *State v. Livesay,* 30 Mo.App. 633, 636, this court said: "Evidence that the witness did not see the pistol before he saw it in the defendant's hand, and that he saw the defendant reaching in the direction of his hip pocket before he saw the pistol in his hand, was evidence from which the jury might infer that the defendant carried the pistol concealed in his pocket. A bystander would not see a pistol if it were concealed in the pocket of another; and if that other were to draw the pistol, no better evidence could be produced that he carried it concealed, unless a witness had seen him in the very act of drawing it." In this case both officers testified that they each saw appellant reach toward his pocket and produce

the pistol, and that prior thereto they were not able to discern any evidence of the weapon. See *State v. Bordeaux,* 337 S.W.2d 47 (Mo.1960).

Appellant argues that subsequent testimony of each officer on cross-examination was to the effect that they did not see appellant "reach into his pocket and remove a gun." We do not agree with this contention. Officer Letterman testified on cross-examination that "there was a movement from his side into the inside of the car," and that was when he saw the pistol, and that he did not observe a pistol when appellant was walking to the automobile. Officer Mokwa testified that he saw appellant take the gun "from the area of his pocket," and that although he did not see "it come right out of his pocket," he saw him "go into the area of his pocket," and he had not "seen anything previously." In addition, this officer was asked this question on cross-examination: "You are saying you actually saw him produce the gun?" and the answer was, "Yes, sir."

This testimony clearly made the issue of whether the pistol was concealed a fact issue for the jury, and the jury resolved it contrary to appellant's contention. There is no merit to appellant's first point.

■ Appellant's second and remaining point is that the trial court erred in denying appellant's motion for a mistrial "when the prosecutor placed the weapon into his pocket to prove that it was concealable." Appellant argues that there was no evidence that the prosecutor was wearing the same type of clothing with the same type pocket as worn by appellant.

Appellant's counsel made the following argument to the jury:

Now, if you look at this weapon, this is not a small weapon. The officers, to believe them you must believe that this weapon was carried in a trouser pocket.

This weapon is at least six, seven inches long, with a large butt stock. Now, if the officers are to be believed, you must believe that this gun is going in a pocket of an individual who is of slight build and tall; that he walked with this group in broad daylight—twelve o'clock at noon, and that the police officer never noticed a bulge or anything in his pocket until the time he got up to the car and then he saw that this weapon was being transferred. He was able to see this much of the weapon [indicating], but with this thing sticking in a trouser pocket, he was unable to see that. Therefore, what are you being asked? You are being asked to infer * * * that this gun was in his pocket, but where do you have any direct evidence that it was?

In rebuttal, the assistant circuit attorney stated: "There is some question whether or not it [the pistol] will fit inside the pocket and be concealable. Of course it can. He makes the question about whether or not the gun—." With this statement counsel placed the pistol in his trousers pocket. Appellant's objection to the demonstration was sustained, but the trial court refused to grant his request for a mistrial.

■ The jury could see the size of the pistol, but there was no evidence that the size of the pocket in counsel's trousers was comparable to the pocket in the trousers of appellant at the time of the charged offense. This demonstration was in effect a form of argument, and as a general rule counsel is not to argue matters not in evidence. *State v. Cuckovich,* 485 S.W.2d 16 (Mo.1972).

The State argues on this appeal that the demonstration was retaliatory in nature to argument by defense counsel, and citing *State v. Granberry,* 484 S.W.2d 295 (Mo.

banc 1972), asserts that therefore appellant is in no position to complain. This contention is not entirely without merit under the circumstances, but we shall not base our ruling on a resolution of this close question. Instead, we shall assume that the demonstration was not completely justified by appellant's prior argument.

■ The trial court sustained appellant's objection, but refused to take the drastic remedy of declaring a mistrial. "Every error which might occur in the trial of a case does not necessarily require the granting of a mistrial, *State v. Camper,* 391 S.W.2d 926 [Mo.1965], and 'The granting or refusal of a mistrial for improper argument lies largely within the discretion of the trial court.' * * * The authority of a court to grant a mistrial 'should be exercised only in extraordinary circumstances,' *State v. James,* 347 S.W.2d 211 [Mo.1961], which is another way of saying that 'a mistrial should be granted only when the incident is so grievous that the prejudicial effect can be removed no other way,' " *State v. Phelps,* 478 S.W.2d 304 (Mo.1972). The proper function of an appellate court in the situation we have, or which we have assumed, is to determine whether as a matter of law the trial court abused its discretion in refusing to declare a mistrial. In view of the action taken, and the trial court's ability and opportunity to view the incident in context, we find no abuse of discretion.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.