STATE of Missouri, Respondent,

v.

Samuel MONTGOMERY, Appellant.

No. 39828.

Missouri Court of Appeals, Eastern District, Division 3.

Jan. 30, 1979.

Patrick M. Sanders, Asst. Public Defender, Twenty-First Judicial Circuit, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Defendant was convicted of second degree burglary and stealing. His appeal raises two alleged trial errors: (1) failure to declare a mistrial after a police officer testified that a witness to the crime had been "able to pick someone out" of a group of photos, purportedly in violation of the edict in *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972); (2) giving MAI–CR 1.10— the "Hammer" Instruction. We find no error and affirm.

Mrs. Anne Volanzina and her son Tony were driving with some friends on Topping Road near Manchester Road in DesPeres. As they passed the W.A. Hedrich Company, a plumbing business, they noticed a man "hanging out" of a broken window in the building. A pickup truck was parked outside the building with a person identified as the defendant sitting behind the steering wheel. Suspicious, Mrs. Volanzina slowed to view the scene and even backed up for a review. The son looked at the defendant for about 15 seconds before he slumped down in the seat of the truck. Tony Volanzina mused that the ring in defendant's nose gave him a distinctive appearance. The Volanzinas made note of the truck license and reported the incident to the DesPeres police. The owner of W.A. Hedrich Company was advised of the apparent break in and discovered that numerous brass plumbing fixtures, copper tubing, and an adding machine were missing from his building. The truck was traced through motor vehicle ownership records to the defendant, and a subsequent search of the truck disclosed a receipt from the Lu Wallach junk yard in St. Louis for the sale of copper on the same date as the burglary. Defendant was questioned by police regarding his participation in the burglary and after having been given his *Miranda* rights, he acknowledged that he had driven another man to the Hedrich building; that his companion had entered the building, removed several items, placed them in the truck and drove the truck and companion to Lu Wallach junk yard where the items were sold. Defendant denied any personal profit from the venture.

At trial an investigative police officer was questioned regarding photographs of lineups shown to the Volanzinas to obtain an identification of participants in the burglary. Defendant complains that the following interrogation of the police officer and the court's failure to grant a mistrial because of it was prejudicial error:

Q. Whom did you show those photographs to?

A. [police officer] I showed those to Mrs. Volanzina and Tony Volanzina.

\* \* \*

Q. Was Mrs. Volanzina able to pick some one out?

A. No, sir.

Q. How about Tony?

A. Yes, he was.

There was no further comment on the photographs.

Defendant claims that the foregoing falls within the fundamental proscription of *State v. Degraffenreid,* supra, which prohibits a third person from testifying as to an extra judicial identification made by an identifying witness except where there is need to rehabilitate the witness after having been impeached.

■ There are several reasons for denying defendant's initial point. First, the objection was not timely. The supposed offensive answer had already been given before any objection was made, and there is no indication that the witness' answer was too swiftly put to have been halted by timely objection. *State v. Woolford,* 545 S.W.2d 367 (Mo.App.1976); *State v. McKnight,* 539 S.W.2d 729 (Mo.App.1976). Second, assuming the question may have been improper there was no further pursuit of the identity of any one in the photographs, and no one was in fact identified. There was no prejudicial error against defendant by the answer, and the trial court did not abuse its discretion in failing to grant a mistrial. *State v. Evans,* 559 S.W.2d 641 (Mo.App.1977); *State v. McKnight,* supra; *State v. Few,* 530 S.W.2d 411 (Mo.App.1975); *State v. Collett,* 526 S.W.2d 920 (Mo.App.1975). Third, the situation here is readily distinguishable from *Degraffenreid,* where the identification issue was critical and shaky so far as the state was concerned. Here, identity was not contested. The eyewitness clearly saw defendant's face for 15 seconds in daylight. There was no equivocation of identity including the observation of the distinctive ring in defendant's nose. Further, defendant admitted being exactly where he was

observed. Thus, defendant's identity was not a real issue, and there was no prejudical error or abuse of discretion in refusing to grant a mistrial. *State v. Leady,* 543 S.W.2d 788 (Mo.App.1976); *State v. Starkey,* 536 S.W.2d 858 (Mo.App.1976); *State v. Roberts,* 535 S.W.2d 119 (Mo.App.1976).

■ Defendant's second point of error concerns the giving of the MAI–CR 1.10, which bears the appellation "Hammer Instruction." The jury retired for deliberation at 3:30 p.m. At 9:10 p.m. the jury was asked by the trial court how it stood numerically as to reaching a verdict. After being told that the count was 10 to 2 without indication whether for guilt or nonguilt, the trial court, over defendant's objection, gave MAI–CR 1.10. At 10:25 the jury announced its verdict of guilty for second degree burglary and stealing. Defendant does not challenge the wording of the instruction but argues that under the circumstances of this case it was improperly coercive, particularly as the trial court had not first made inquiry as to whether further deliberation would result in agreement. Defendant concedes that it is proper for the trial court to inquire where the jury stands numerically, *State v. Baker,* 293 S.W.2d 900 (Mo.1956). But he urges us to follow *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), where inquiry as to numerical standing was reproved. However, our Supreme Court has specifically rejected *Brasfield* in this regard and approved the use of the Hammer Instruction. *State v. Smith,* 431 S.W.2d 74 (Mo.1968). The submission of the Hammer Instruction is discretionary with the trial court, and we find no indication of coercion or attempt to obtain an indication of the result as condemned in *State v. Sanders,* 552 S.W.2d 39 (Mo.App.1977). There was no abuse of discretion by the submission of MAI–CR 1.10 irrespective of the fact that no specific inquiry was made to the jury whether an agreement as to verdict could be reached prior to its submission. *State v. Sykes,* 565 S.W.2d 663 (Mo.App.1978); *State v. Carroll,*

562 S.W.2d 772 (Mo.App.1978); *State v. Voyles,* 561 S.W.2d 697 (Mo.App.1978).

Judgment affirmed.

REINHARD, P. J., and CLEMENS, J., concur.